**Date Signed:**
**May 10, 2022**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re: | Case No. 17-01078 |
| | Chapter 7 |
| HAWAII ISLAND AIR, INC., | |
| Debtor. | |
| ELIZABETH A. KANE, TRUSTEE, | Adv. Pro. No. 18-90007 |
| Plaintiff, | Dkt. 429, 431, 432, 435, 440, 441, 442, 443, 445, 446, 447, 448 |
| vs. | |
| ISLAND LEASING, LLC et al. | |
| Defendants. | |

## <u>MEMORANDUM OF DECISION ON REMAND</u>

In this adversary proceeding, the trustee seeks avoidance and

recovery of certain pre- and post-petition transfers. I entered partial summary judgment on some of the claims and decided the remaining claims after trial. The district court has vacated the partial summary judgment, affirmed my posttrial decision in part and reversed it in part, and remanded the matter. Both remands from district court pertain to the trustee's third cause of action – avoidance of transfers that, according to the trustee, were made after the debtor filed its bankruptcy petition.

The parties disagree about what issues are left for me to decide on remand and what procedure I should follow. I directed the parties to file dispositive motions: defendant Island Leasing, LLC, filed one motion; and the trustee filed three. In summary, Island Leasing contends that the district court's decisions require me to enter judgment in its favor. The trustee contends that I must (or should) reopen discovery, set a new trial date, strike certain testimony given at the first trial, and allow further briefing.

For the reasons set forth below, I will grant Island Leasing's motion and deny the trustee's motions.

U.S. Bankruptcy Court - Hawaii   #18-90007   Dkt # 455   Filed  05/10/22   Page 2 of 24

## I. BACKGROUND

### a. The Challenged Transfers

Hawaii Island Air, Inc. ("HIA") operated an airline. It leased a fleet of ATR aircraft from Island Leasing and owned spare parts, supplies, and specialized tooling for the aircraft. Some of the spare parts are called "rotables," meaning that they can be periodically removed from the aircraft and then inspected, repaired, reconditioned, and reinstalled. Others are called "consumables and expendables," or "C&E," meaning that they are used once and then discarded. A third category consists of "tooling," meaning specialized tools that are designed for use with aircraft of this type.

In June 2017, HIA purported to sell certain rotables (the "IL Rotables") to Island Leasing for $800,000.

In August 2017, HIA accepted a purchase order from AAR Supply Chain, Inc. ("AAR"). HIA agreed to sell to AAR the IL Rotables, other rotables that it had not purported to sell to Island Leasing (the "HIA Rotables"), C&E, and tooling. AAR promised to pay HIA $1,200,000 in

3

three installments of $400,000 each.

Shortly after execution of the purchase order, AAR paid the first installment and HIA shipped a batch of items to AAR.

On October 12, 2017, AAR paid HIA the second installment of $400,000. HIA wired the same amount to Island Leasing on the following day.

On October 16, 2017, two events occurred: (1) HIA filed a voluntary petition under chapter 11;[1] and (2) FedEx picked up at HIA's loading dock a batch of materials for delivery to AAR. HIA filed its petition at 1:55 PM. No one has found any evidence showing the time at which FedEx took possession of the materials.

The debtor made two additional shipments to AAR in November 2017. Island Air requested that AAR wire the final installment of $400,000 directly to it, even though the purchase order provided for payment to HIA. AAR held the money pending resolution of who was entitled to

_____

[1] Unless otherwise indicated, "chapter" and "section" refer to parts of the Bankruptcy Code, 11 U.S.C.

4

receive it.

### b. Litigation in This Court

The trustee's amended complaint in this adversary proceeding (ECF 26) contains three counts. Count I alleges that HIA's payment of $400,000 to Island Leasing on October 13, 2017, was an avoidable preferential transfer. Count II seeks a declaratory judgment that the trustee, and not Island Leasing, has the right to the last $400,000 installment due from AAR. Count III alleges that the shipments to AAR after the petition date are avoidable under section 549 and that the trustee is entitled to recover the transferred items or their value from AAR or Island Leasing under section 550.

The trustee filed a motion for a partial summary judgment concerning the shipments made on and after the petition date (Count III of the complaint). After a hearing held two days before the discovery cutoff, I entered an order ("PSJ Order") in favor of the trustee in which I held that: (i) the shipments occurring on October 16, 2017 and those occurring in November 2017 were "transfers" within the meaning of sections 549(a) and 101(54); (ii) those transfers occurred after the commencement of the

U.S. Bankruptcy Court - Hawaii   #18-90007   Dkt # 455   Filed  05/10/22   Page 5 of 24

debtor's case within the meaning of section 549(a)(1); (iii) the value of the C&E included in the above transfers was $180,000, but there was a genuine factual dispute about the value of the other items; and (iv) AAR was the initial transferee and Island Leasing was "the entity for whose benefit such transfer[s] was made," within the meaning of section 550(a)(1).

Shortly before trial, the trustee and AAR entered into a settlement agreement. I approved the settlement by order entered in the main case on August 6, 2019.[2] AAR agreed to pay $450,000 to the trustee to resolve the estate's claims against AAR and AAR's counterclaims. The parties allocated $400,000 of this amount to the trustee's recovery upon her section 549 claims. Island Leasing appealed the order approving the settlement to the district court. That court stayed the appeal.[3]

A trial was held on remaining issues on August 13-15, 2019, and I issued a post-trial decision on November 25, 2019. I ruled that the transaction between HIA and Island Leasing, although a sale in form, was

---

[2] *See* ECF 683 in main bankruptcy case.
[3] *See Carbonview Limited, LLC et al v. Kane et al,* No. 1:19-cv-00436-JMS-RT, ECF No. 22 (D. Haw. Feb. 3, 2020).

U.S. Bankruptcy Court - Hawaii    #18-90007    Dkt # 455    Filed  05/10/22    Page 6 of 24

a secured loan in substance and that Island Leasing did not perfect its interest in the IL Rotables. Accordingly, I held that HIA's prepetition payment of $400,000 to Island Leasing was an avoidable preference (Count I of the complaint) and that the trustee was entitled to a declaratory judgment that Island Leasing did not have title to or a perfected security interest in the IL Rotables and had no right to the remaining receivable from AAR (Count II).

The PSJ Order decided most issues under Count III; the remaining issue at trial was the trustee's recovery. I determined that section 550 allowed the trustee to recover either the transferred property itself or a money judgment in the amount of its value. In this case, the trustee elected to recover the value of the property. I held that the trustee did not meet her burden of establishing the value by a preponderance of the evidence, with the result that Island Leasing prevailed on Count III.

### c. Appeals and District Court Decisions

Island Leasing appealed the order granting partial summary judgment and the parties cross-appealed the post-trial decision.

U.S. Bankruptcy Court - Hawaii   #18-90007   Dkt # 455   Filed  05/10/22   Page 7 of 24

The district court (Judge Otake presiding) vacated the PSJ Order and remanded.[4]

Separately, the district court (Judge Kobayashi presiding) affirmed the post-trial ruling in part, reversed in part, and remanded.[5] The order affirmed my determinations with respect to Counts I and II but reversed my decision with respect to remedies under Count III. Island Leasing has appealed the district court's decision to the Ninth Circuit; that appeal is pending.

## II.    LEGAL STANDARD

### a.  Law of the Case and Rule of Mandate

On remand, this court must comply with the law of the case doctrine and the rule of mandate. These two rules serve the same purpose and largely overlap but differ in some respects.

"The law of the case doctrine states that the decision of an appellate

---

[4] *Island Leasing, LLC v. Kane et al. (In re Hawaii Island Air, Inc.)*, 622 B.R. 85 (D. Haw. 2020)
[5] *Island Leasing, LLC v. Kane et al.*, 2020 WL 6326101, *1 (D. Haw. Oct. 28, 2020)

8

court on a legal issue must be followed in all subsequent proceedings in the same case."[6] Under this doctrine, "a court is generally precluded from reconsidering an issue previously decided by the same court, or a higher court in the identical case."[7] The issue in question "must have been decided explicitly or by necessary implication in [the] previous disposition."[8] Although this doctrine is considered discretionary, the Ninth Circuit has held that a bankruptcy court should follow an appellate decision unless: "(1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial."[9]

The rule of mandate allows a lower court to decide anything not

---

[6] *Herrington v. County of Sonoma*, 12 F.3d 901, 904 (9th Cir. 1993) (quoting *Maag v. Wessler*, 993 F.2d 718, 720 n.2 (9th Cir. 1993).

[7] *Id.* at 904 (quoting *Milgard Tempering Inc. v. Selas Corp. of America*, 902 F.2d 703, 715 (9th Cir. 1990).

[8] *Id.*; *see In re Sanford Fork & Tool Co.*, 160 U.S. 247, 255-256 (1895).

[9] *In re Rainbow Magazine, Inc.*, 77 F.3d 278, 281 (9th Cir. 1996) (citing *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995)).

9

foreclosed by the mandate.[10] "An order issued after remand may deviate from the mandate . . . if it is not counter to the spirit of the [appellate] court's decision. . . ."[11] In construing a mandate, "the lower court may consider the opinion the mandate purports to enforce as well as the procedural posture and substantive law from which it arises."[12] A court lacks jurisdiction to decide an issue foreclosed by the mandate.[13]

### b. Avoidance of Transfers under 11 U.S.C. § 549

Both remands from the district court center on the trustee's third cause of action – alleged avoidable transfers under sections 549 and 550. To demonstrate that there was an avoidable transfer under section 549, the trustee must show (i) there was a "transfer," (ii) the transfer was of "property of the estate," (iii) the transfer occurred after the commencement of the bankruptcy case, (iv) and the transfer was not authorized under the

---

[10] *Herrington*, 12 F.3d at 904.

[11] *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1404 (9th Cir. 1993).

[12] *U.S. v. Kellington*, 217 F.3d 1084, 1093 (9th Cir. 2000).

[13] *U.S. v. Luong*, 627 F.3d 1306, 1309 (9th Cir. 2010) (where the court of appeals affirmed convictions but remanded for resentencing, district court lacked jurisdiction to consider challenges to the convictions), *cert. denied*, 565 U.S. 855 (2011).

U.S. Bankruptcy Court - Hawaii   #18-90007   Dkt # 455   Filed  05/10/22   Page 10 of 24

Bankruptcy Code or by the court.[14]

The district court did not disturb my determinations that the first, second, and fourth elements were met. In the appeal from the partial summary judgment, however, the district court vacated my decision that the October 16 shipment was a post-petition transfer satisfying the third element. (There is no dispute that the November shipments were post-petition transfers.)

I held that the October 16 shipment was a post-petition transfer based on an exchange of emails in which the parties agreed that HIA, rather than AAR, would pay the cost of shipment so AAR could avoid incurring a tax obligation. I held that this transformed the agreement from a "shipment contract," where title passes from the seller to the buyer when the shipper picks up the goods, to a "destination contract," where title does not pass until the goods are delivered to the buyer. The district court held that, under Illinois law, only an "express agreement" can transform a shipment

_____

[14] 11 U.S.C. § 549(a). The exceptions under § 549(b) and (c) do not apply as HIA's chapter 11 case was not an involuntary case and the alleged transfer was not of an interest in real property to a good faith purchaser.

11

contract into a destination contract and ruled that the agreement to shift the cost of shipment from buyer to seller was insufficient for that purpose.[15] The district court concluded that, "The Bankruptcy Court therefore erred when it ruled that the October 16 Shipment was a post-petition transfer."[16] The district court remanded the matter "for further proceedings consistent with this Order."[17]

The parties disagree about this court's task on remand. Island Leasing argues that the district court's decision establishes, as a matter of law, that the October 16 shipment was not a post-petition transfer because the email exchange was not an express agreement to convert the contract from a shipment contract to a destination contract. In the district court's words, "[n]either the Purchase Order nor the emails . . . obligated the Debtor to transport the goods to AAR's specified destination and tender the goods at that point. And in the absence of such an express obligation,

---

[15] *In re Hawaii Island Air,* 622 B.R. at 90-91
[16] *Id.* at 92.
[17] *Id.*

U.S. Bankruptcy Court - Hawaii   #18-90007   Dkt # 455   Filed   05/10/22   Page 12 of 24

the contract could not have been a destination contract. . . ."[18]

In contrast, the trustee notes that the district court was reviewing a summary judgment and that vacatur of a summary judgment normally means that the case should proceed to trial when (as in this case) the respondent did not cross-move for summary judgment. The trustee primarily relies on *Minidoka Irrigation Dist. v. Department of Interior of U.S.*, 154 F.3d 924 (9th Cir. 1998) (*Minidoka I*), and *Minidoka Irrigation Dist. v. Department of Interior of U.S.*, 406 F.3d 567 (9th Cir. 2005) (*Minidoka II*). In *Minidoka I*, the Ninth Circuit reversed a summary judgment in favor of the government and remanded the case to the district court. The district court then held a trial and again entered judgment in favor of the government. In *Minidoka II*, the Ninth Circuit affirmed the judgment after trial.

But the *Minidoka* decisions are distinguishable. In *Minidoka I*, the court of appeals explicitly reversed the summary judgment because there were genuine issues of material fact.[19] In contrast, while the district court in

_____

[18] *Id*. at 90-91.

[19] *Minidoka I*, 154 F.3d at 927-928 ("MID introduced enough evidence for a jury to find that the United States did not have such clear intent";

U.S. Bankruptcy Court - Hawaii   #18-90007   Dkt # 455   Filed  05/10/22   Page 13 of 24

this case cited and quoted the summary judgment standard at the beginning of its decision, the court did not use similar qualifying language in its analysis of the facts and law. Unlike the Ninth Circuit in *Minedoka I*, the district court did not overturn summary judgment on the grounds that there was a genuine dispute of fact.[20]

Therefore, while both parties' interpretations have some support, I conclude that Island Leasing's position is more plausible. Under the law of the case doctrine and the rule of mandate, the district court's decision

---

"[n]evertheless, viewing the evidence in light most favorable to MID, there is a genuine issue of material fact"; and "MID introduced sufficient evidence to create a genuine issue of material fact whether the United States repudiated the contract.")

[20] The trustee's other main citations are also inapt. For example, in *U.S. v. Kellington*, 217 F.3d 1084 (9th Cir. 2000), the court of appeals determined that the district court reinstating and granting a motion for new trial on remand after reversal of a judgment for acquittal was not beyond the mandate "REMANDED FOR ENTRY OF JUDGMENT AND FOR SENTENCING" because the motion for new trial was not considered in the initial appeal and not barred by the mandate. Because the motion for new trial was not explicitly considered and there "can be no implication that, in reversing the judgment of acquittal, the [appellate court] implicitly disposed of the merits of the motion for a new trial," the district court's actions were not foreclosed. *Id.* However, here, the district court explicitly considered the timing of the October 16 shipment and concluded that the transfer did not occur after commencement of the case.

14

forecloses the contention that the October 16 shipment was a post-petition transfer.[21]

Even if the district court's decision did not conclusively decide the entire issue, the law of the case doctrine and the law of remand would still require me to follow the district court's legal conclusions.  As the district court held, due to the choice of law provision in the purchase order, Illinois law controls.[22] Under Illinois' version of the Uniform Commercial Code, when title to goods passes under a contract depends upon whether it is a "shipment contract" or a "destination contract."[23] When a contract is silent,

_____

[21] The exceptions to the law of the case doctrine do not apply. (1) The district court's decision is not clearly erroneous and enforcing it would not work a manifest injustice. (2) There is no intervening controlling authority that would make reconsideration appropriate. (3). The trustee has not demonstrated "substantially different" evidence would be adduced at a subsequent trial. Because only two days remained of the discovery period and no discovery requests were pending at the time of the summary judgment hearing (and the primary AAR witnesses had already been deposed), the trustee already had all of the evidence that she was ever likely to obtain.

[22] *See Hawaiian Telcom Commc'ns, Inc. v. Tata Am. Int'l Corp.*, Civil No. 10-00112 HG-LEK, 2010 WL 2594482, at *5 n.7 (D. Haw. May 24, 2010) (stating that under Hawai'i law, the "parties' choice of law provision will be upheld if that law has some nexus with either the parties or the contract").

[23] *See Galicia v. Country Coach, Inc.*, 324 F. App'x 687, 688-89 (9th Cir. 2009)

15

there is a presumption in favor of a shipment contract.[24]

In this case, the original purchase order established a shipment contract. Because no one knows exactly when FedEx picked up the items at HIA's debtor's loading dock, the trustee cannot prove that the October 16 shipment occurred post-petition unless she proves that the debtor and AAR changed the agreement and explicitly agreed to a delivery contract.[25]

The only evidence on this issue that the trustee has offered is the exchange of emails that the district court held were insufficient.[26] The district court ruled that emails only changed the parties' agreement about which of them would pay for shipment and did not affect the point at which title transferred. Further, the district court held that, "even if AAR had intended for title to transfer upon delivery for tax purposes, there is no

_____

(construing a similar provision under California's enactment of the UCC).
[24] *Mach Mold Inc. v. Clover Assocs., Inc.*, 383 F.Supp.2d 1015, 1028 (N.D. Ill. 2005).
[25] *Windows, Inc. v. Jordan Panel Systems Corp.*, 177 F.3d 114, 117 (2nd Cir. 1999); *see Dana Debs, Inc. v. Lady Rose Stores, Inc.*, 65 Misc.2d 697, 319 N.Y.S.2d 111, 112 (N.Y. City Civ.Ct. 1970) (no destination contract absent "explicit **written** understanding" that the goods will be delivered to buyer at a "particular destination) (emphasis added).
[26] *In re Hawaii Island Air, Inc.*, 622 B.R. at 92.

U.S. Bankruptcy Court - Hawaii  #18-90007  Dkt # 455  Filed  05/10/22  Page 16 of 24

evidence that the debtor assented to a modification of the purchase order's provisions regarding title transfer."[27]

The trustee moves the court (ECF 435) to permit additional discovery and hold a further trial on the question whether the October 16 shipment was a post-petition transfer. I reject this suggestion for two reasons. First, I heard the motion for partial summary judgment only two days before the discovery cutoff. The trustee has not explained why she could not or did not conduct all appropriate discovery on this point long ago. Second, the discovery that the trustee proposes to conduct now is beside the point. For example, she wishes to request information from AAR about "the specific tax AAR sought to be avoided, the type of tax(es) at issue (e.g., Hawaii GET, Illinois Use Tax, etc.), the internal polices of AAR regarding taxes generally, the action or inaction of AAR taken to avoid the taxes, communications with the Debtor regarding each applicable tax, and the analysis and rationale behind the action or inaction." (ECF 435 at 37). But AAR's internal policies are not relevant because the question is whether

---

[27] *Id.*

U.S. Bankruptcy Court - Hawaii   #18-90007   Dkt # 455   Filed  05/10/22   Page 17 of 24

there was an explicit agreement between the debtor and AAR, not AAR's internal decision-making.

The trustee also moves the court (ECF 431) to strike some of the trial testimony given by an AAR employee about the emails. Because I will not conduct a further trial on the issue, there is no reason to strike that testimony, and I will deny that motion.

Therefore, I conclude that, even if the district court did not decide that the October 16 shipment was not a post-petition transfer, there is no genuine issue of fact[28] that the purchase order was a shipment contract and that title transferred when the shipment was made. Because the trustee has not established that the carrier picked up the shipment on October 16 after the debtor filed its petition, the trustee has not established that the October 16 shipment occurred after commencement of the case.[29]

---

[28] Island Leasing's motion is not labeled a motion for summary judgment, but it is appropriate to treat it as one, because it seeks the entry of judgment as a matter of law based on the existing evidentiary record.

[29] The district court went on to hold that, "[h]aving concluded that the October 16 shipment was not a post-petition transfer, the Court need not determine whether Island Leasing was the entity for whose benefit the transfer was made." *Id.* The district court may have overlooked the fact that

18

### c.     The trustee's recovery under section 550

Once a transfer is avoided under section 549, section 550 provides

that the trustee "may recover, for the benefit of the estate, the property

transferred, or, if the court so orders, the value of such property[.]"[30] The

trustee may recover from either "the initial transferee or the entity for

whose benefit such transfer was made."[31]

In the appeal from the posttrial decision, the district court held that,

"The bankruptcy court erred in determining that recovery of the value of

the property was the appropriate remedy and that the value could not be

determined."[32] The district court followed Ninth Circuit case law holding

that "[w]here the value of the property cannot be easily or readily

determined . . . the correct remedy is to return the property, not award an

_____

the partial summary judgment also covered the shipments made in
November, and there is no dispute that those shipments occurred post-
petition. This does not matter, however, because, for the reasons stated in
the next section, I conclude that the trustee is not entitled to recover from
Island Leasing in any event.

[30] 11 U.S.C. § 550(a).

[31] 11 U.S.C. § 550(a)(1).

[32] *Island Leasing¸* 2020 WL 6326101 at *7.

U.S. Bankruptcy Court - Hawaii   #18-90007   Dkt # 455   Filed  05/10/22   Page 19 of 24

estimate of the value of the property."[33] The district court remanded and described this court's task: "On remand, the bankruptcy court must decide whether there is conflicting evidence as to the value of the property and whether the value of the property is readily determinable . . . and proceed according to that determination."[34]

I hold that there was no "conflicting evidence as to the value of the property." Only the trustee offered valuation evidence; Island Leasing criticized the trustee's evidence and the inferences she drew from it but did not offer any evidence of its own. And there was no internal inconsistency in the trustee's evidence. She argued that the evidence supported several different possible values, but the fact that one could draw different inferences from a body of evidence does not mean there is conflicting evidence.

---

[33] *Id.* (citing *USAA Fed. Sav. Bank v. Thacker (In re Taylor)*, 599 F.3d 880, 892 (9th Cir. 2010); *Cf. Trout v. Fin. Servs. (In re Trout)*, 609 F.3d 1106, 1113 (10th Cir. 2010) ("Moreover, as other courts have also recognized, the language of § 550(a) suggests that the default rule is the return of the property itself, whereas a monetary recovery is a more unusual remedy to be used only in the court's discretion.").

[34] *Id.* at *7 (internal citation omitted).

U.S. Bankruptcy Court - Hawaii   #18-90007   Dkt # 455   Filed 05/10/22   Page 20 of 24

But I hold that the value of those items is not "easily or readily determined," for two reasons.

First, the evidence does not adequately identify the property that HIA transferred post-petition. The most specific identifying evidence shows that the items shipped after October 16, 2017, were two wooden crates of "Leading Edge," one wooden crate of "consumables,"1 pallet of "Unserviceable Parts (additional)," 1 pallet of "HAZMAT Parts," (Exhibit 129)[35] and one pallet of "tooling" (Exhibit 15). Except for the "Leading Edge,"[36] no evidence shows what items were in the crates or on the pallets. It is impossible to put a value on unknown items.

Second, the trustee did not offer any evidence of "value" of any specific item. "Value" usually means the "fair market value of the subject property at the time of the transfer."[37] The evidence shows that there was a market for parts and tooling for the ATR aircraft: several companies

_____

[35] Exhibits 16 and 127 include lists that are less detailed than, but consistent with, the list in Exhibit 129.

[36] "Leading Edge" might refer to the metal strip that covers the forward (leading) edge of an aircraft's wing, but the evidence does not identify it.

[37] *Joseph v. Madray (In re Brun)* 360 B.R. 669, 674 (Bankr. C.D. Cal. 2007).

U.S. Bankruptcy Court - Hawaii   #18-90007   Dkt # 455   Filed  05/10/22   Page 21 of 24

expressed an interest in buying the items (although not on terms that HIA found acceptable). The trustee could have proven the market value of the items by offering (for example) expert testimony.[38]

The trustee did not offer any evidence of value based on a relevant market. The trustee presented the price at which AAR resold some of the items. But AAR and HIA did not sell the items in the same market. HIA, which was not in the business of selling aircraft parts, sold the items as is, in bulk, to a reseller. AAR is a commercial parts dealer; it inspected the items, reconditioned some of them, marketed them through its established channels and sales network, and sold them in small lots. There is no reason to think that the items had the same value in HIA's hands as they had in AAR's hands. The trustee also offered evidence of how AAR allocated its acquisition cost among the various items, but AAR's testimony makes clear

---

[38] The fact that there was a market for these items distinguishes this case from others involving items for which there is no market, such as the lien on a car in *In re Taylor* or small minority interests in limited liability companies in *FedChex, LLC v. Electronic Funds Solutions, LLC (In re Bishop)*, BAP Nos. CC-16-1341 TaKuL, 2017 WL 3623917 (B.A.P. 9th Cir. August 23, 2017).

U.S. Bankruptcy Court - Hawaii   #18-90007   Dkt # 455   Filed  05/10/22   Page 22 of 24

that that allocation was done to suit AAR's internal cost accounting policies and objectives and did not necessarily reflect the value of any particular item. And the trustee has not requested a further trial on the valuation issue; rather, she has asked only for supplemental briefing (ECF 432).

Based upon the evidence submitted, I determine that the value of the transferred property is not easily or readily ascertainable, making return of the property the appropriate recovery. Because of this, I find in favor of Island Leasing on Count III. Island Leasing never received possession or control of the property, so the trustee could not recover the items from Island Leasing.[39]

### III. CONCLUSION

For the foregoing reasons, I will GRANT Island Leasing's motion for

---

[39] The trustee's settlement with AAR released any claims to recover the transferred property from AAR. The trustee correctly points out that the settlement is subject to entry of a final order approving it, and that condition is unsatisfied because Island Leasing's appeal of the order approving it is still pending. But the court and the trustee can't simply ignore the settlement while the condition is outstanding. If the order approving the settlement with AAR is reversed on appeal, all of the trustee's claims and remedies against AAR would remain for determination.

U.S. Bankruptcy Court - Hawaii   #18-90007   Dkt # 455   Filed  05/10/22   Page 23 of 24

entry of judgment on remand and DENY the trustee's motions. Counsel for

Island Leasing shall prepare and circulate a form of final judgment.

**END OF ORDER**